# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA**
        **Plaintiff,**


    **v.**                         **Case No. 00-CR-170**

**RICHARD O'HARA**
        **Defendant.**

---

## DECISION AND ORDER

Defendant Richard O'Hara seeks early termination of his supervised release. I deny the motion.

### I.

The government charged defendant with conspiracy to possess stolen property and travel in interstate commerce to commit extortion:

> O'Hara, an antique art dealer from Chicago, had an ongoing business and sometimes romantic relationship with Marilyn Karos, a Milwaukee art dealer, beginning in about 1991. In the mid to late 1980's, Karos received four antique scientific instruments – three astrolabes and one armillary sphere – as collateral in an independent transaction. Some time later, after researching the origin and worth of the collateral Karos became aware that at least some if not all of it was stolen.

> In 1997, Karos met Zakria El-Shafei. Karos hired El-Shafei to assist her in selling various antique and art works. Among the items Karos asked El-Shafei to sell were some valuable paintings, whose purchase had been financed by O'Hara, and, eventually, the astrolabes and armillary sphere. El-Shafei's lack of success in selling either the paintings and/or scientific instruments became a source of frustration for both Karos and O'Hara.

> Karos really became upset upon learning that El-Shafei pawned one of the astrolabes at a jewelry store. She confronted El-Shafei, who returned only some of the items that she had given him to sell. Karos then spoke to O'Hara about the problems she was having with El-Shafei. O'Hara offered to speak to

El-Shafei himself in an effort to get the rest of the items back.

After plans to meet with El-Shafei in Chicago failed, O'Hara decided to travel to Milwaukee to confront El-Shafei. O'Hara asked two associates, whose presence he felt would intimidate El-Shafei, to join him. On November 22, 1997, O'Hara and the two men met at his Chicago gallery, drank alcohol, and then drove to Milwaukee. On arriving in Milwaukee, O'Hara and the two men met Karos at a public rendezvous point, from where they all proceeded to Karos's residence.

That night, Karos invited El-Shafei to her home. El-Shafei arrived at Karos's house at approximately 8:00 p.m. and followed her into the basement where he was assaulted by O'Hara and the two men. After a struggle, El-Shafei managed to break free and call 911. When the police arrived, El-Shafei informed them that he had been assaulted by three men, one of whom wore a mask and beat him with a baseball bat. The bat wielder was later identified as O'Hara.

United States v. O'Hara, 301 F.3d 563, 566-67 (7th Cir. 2002).

A jury convicted defendant of both counts, and I sentenced him to 60 months in prison on each count consecutive for a total of 120 months, a $25,000 fine, and 3 years of supervised release on each count concurrent. The Seventh Circuit affirmed defendant's convictions and sentence on direct appeal, id. at 572, and I later rejected several collateral attacks, e.g., O'Hara v. United States, No. 03-C-1400, 2006 WL 1518941 (E.D. Wis. May 26, 2006). Defendant completed his prison sentence on December 1, 2009.

On July 7, 2011, defendant filed a letter-request for early termination of supervised release. In the letter, he states that while serving his prison sentence he completed college courses and institutional programming, including the RDAP. While on supervision, he has avoided new violations of the law, followed the rules, and abstained from drugs and alcohol. He has also reconnected with his daughter, and they have purchased and are rehabilitating an apartment building. Defendant indicates that he plans to teach his daughter the antique and art business, while also operating their construction and remodeling business. Defendant states that he has satisfied all financial penalties, requires no ongoing correctional treatment,

2

and presents no threat to the public.

In its response, the government notes a lack of documentation regarding defendant's stated accomplishments and requests that he be ordered to provide additional information to the court. For example, the government notes that several of the courses defendant claims to have taken are not included in a February 26, 2008 Bureau of Prisons ("BOP") progress report. The government also expresses concern, based on the nature of defendant's conviction and his characteristics as identified in the pre-sentence report ("PSR"), about his means of income. The government notes that defendant's work history consists almost entirely of self-employment, and even though he was successfully self-employed prior to his incarceration he also engaged in illegal activity to sustain his business. The government also notes that while in one paragraph of his letter defendant complains about the financial consequences of his divorce, on the next page he discusses investing in commercial property. The government suggests that continued supervision is needed to protect the public, as the areas of real estate investing and antiquities leave a significant amount of leeway to exercise poor judgment, which could include further criminal activity.

In his reply, defendant states that he cannot be faulted for the BOP's record keeping and reiterates the courses he took while imprisoned. He also notes his advanced age, lack of any prior criminal record, and successful self-employment since 1965. He denies engaging in illegal activity to sustain his business, noting that his crime involved no financial gain. Regarding his finances, he indicates that he recently received significant sums from the sale of real estate and his gallery. He characterizes the government's concerns about the leeway involved in his self-employment as baseless and indicates that he can, at a hearing, produce documentation of his activities and finances. He states that he is involved only in legal and

3

honest business activities and meets the criteria for early termination.

## II.

The court may, after considering the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7),[1]

terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice[.]

18 U.S.C. § 3583(e)(1).  The statute thus permits early termination on three conditions:

(1) the defendant has served at least one year of supervision;

(2) the government is given notice and an opportunity to be heard; and

(3) termination is in the interest of justice based on the pertinent § 3553(a)

factors and the defendant's conduct.

See United States v. Medina, 17 F. Supp. 2d 245, 245-46 (S.D.N.Y. 1998); see also United States v. Lowe, 632 F.3d 996, 998-99 (7th Cir. 2011).

In the present case, defendant has served more than one year, and the government has been afforded a chance to respond.  The issue is thus whether termination would be in the interest of justice.

The district court possesses wide discretion in making this determination.  See United States v. Hook, 471 F.3d 766, 771 (7th Cir. 2006).  However, courts have held that the conduct

---

[1]These factors include the nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a)(1); the need to deter, protect the public, and provide the defendant with needed correctional treatment, § 3553(a)(2)(B), (C), & (D); the sentencing guidelines and policy statements, § 3553(a)(4) & (5); the need to avoid unwarranted sentence disparities, § 3553(a)(6); and the need to provide restitution to any victims of the offense, § 3553(a)(7).

of the defendant necessary to justify early termination should include more than simply following the rules of supervision; otherwise, every defendant who avoided revocation would be eligible for early termination. Instead, courts have generally granted early termination only in cases involving new or unforeseen circumstances, or where the defendant's behavior has been exceptionally good. See, e.g., United States v. Kay, 283 Fed. Appx. 944, 946-47 (3d Cir. 2008); United States v. Lussier, 104 F.3d 32, 36 (2d Cir. 1997); Folks v. United States, 733 F. Supp. 2d 649, 651-52 (M.D.N.C. 2010); United States v. McKay, 352 F. Supp. 2d 359, 361 (E.D.N.Y. 2005); United States v. Caruso, 241 F. Supp. 2d 466, 468-69 (D.N.J. 2003); Medina, 17 F. Supp. 2d at 246-47.

The defendant bears the burden of demonstrating that early termination is warranted. See United States v. Weber, 451 F.3d 552, 559 n.9 (9th Cir. 2006) (citing United States v. Weintraub, 371 F. Supp. 2d 164, 167 (D. Conn. 2005); McKay, 352 F. Supp. 2d at 361). While Fed. R. Crim. P. 32.1(c) mandates a hearing before the court modifies the conditions of supervision, the court need not hold a hearing before denying a request for early termination. See United States v. Reagan, 162 Fed. Appx. 912, 913 (11th Cir. 2006) (citing United States v. Nonahal, 338 F.3d 668, 671 (7th Cir. 2003)).

### III.

Defendant notes his compliance with the rules, payment of the fine, and avoidance of substance abuse, but this is no more than the court expects of persons on supervision. See United States v. Hicks, No. 05-cr-40023, 2009 WL 1515203, at *1 (S.D. Ill. June 1, 2009) ("The Court expects defendants to comply with the terms of their supervised release."). Similarly, while defendant's reconciliation with his one of his daughters is laudable (and their business plans sound fine), I cannot find this or any other aspect of his conduct exceptional. Defendant

5

makes no claim that the requirements of supervision are burdensome or that they interfere with his rehabilitation or employment. He states in his reply brief that his "present need is to be able to travel to Europe, where a past business investment remains unsettled." (R. 107 at 3.) However, he makes no claim that the conditions of release prevent him from handling his business affairs; a defendant on supervision may be granted permission to leave the district with the approval of the supervising probation officer or the court, and defendant does not state that any such requests have been made or denied in his case.

Nor do the § 3553(a) factors support defendant's request. The nature of the offense is quite serious, as discussed above. Defendant and his accomplices lured a man into the basement of a home and physically assaulted him over stolen items. Further, while defendant is an older man, now approaching seventy, and lacks a prior record, I cannot conclude that these personal characteristics support early termination. Defendant was near sixty when he committed the instant offenses, so the statistics suggesting a lower risk of recidivism for older individuals lack persuasive force in this case. Continued supervision is necessary to deter and protect the public. While defendant denies that he used criminal means to support his business in the past, this case did involve art and antiquities, and defendant indicates that his present and future business plans involve such items. Ongoing supervision of his financial and business affairs is warranted.[2]

---

[2]I will assume that defendant took and completed the classes he lists, and that the business dealings he discusses are legitimate. I see no need for a hearing to receive proof on this or any other issue raised in the motion. I will also accept that defendant lacks ongoing correctional treatment needs. Nevertheless, continued supervision is warranted based on the other factors discussed in the text.

**IV.**

**THEREFORE, IT IS ORDERED** that defendant's request for early termination (R. 103) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 16th day of September, 2011.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge